1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SUNIL WADHWA and
LYNN LORI WADHWA,

               Plaintiffs,                    Civ. No. S-11-1784 KJM KJN

      vs.

AURORA LOAN SERVICES, LLC,       <u>ORDER</u>
et al.,

               Defendants.

_____/

I.  <u>Factual and Procedural Background</u>

         On July 6, 2011, plaintiffs filed a complaint against Aurora Loan Services, LLC (Aurora), Capitol One Mortgage Corporation and Mortgage Electronic Registration Systems, Inc. (MERS), alleging causes of action for fraudulent misrepresentation, breach of fiduciary duty, unjust enrichment, civil conspiracy, quiet title, usury and fraud, wrongful foreclosure and breach of security interest, all stemming from the purchase of and foreclosure on the real property located at 3055 Orbetello Way, El Dorado Hills, California.  ECF No. 1 at 1.

         On July 7, 2011, they filed a motion for a temporary restraining order (TRO), seeking an order directing the defendants "from conducting the trustee's sale" against the subject property and arguing that a TRO should issue so that plaintiffs will not be evicted from their home.  ECF No. 6 at 2.  At a different place in the moving papers, plaintiffs say they are seeking

1   to restrain defendants "from carrying out any unlawful detainer action and/or forcing plaintiffs to

2   vacate their home. . . ," reselling plaintiffs' home, or displacing plaintiffs from the subject

3   property.  ECF No. 6-1 at 2.  At yet another place in the papers, they state, "Plaintiffs are now

4   facing the loss of their home in an unlawful detainer trial scheduled for July 11, 2011."  ECF No.

5   6-2 at 1.  In the conclusion section of the points and authorities in support of their TRO

6   application, plaintiffs ask for an order directing defendants to "refrain from reselling, or

7   otherwise transferring, encumbering, hypothecating to any third party the Subject Property . . .or

8   displacing Plaintiffs from the Subject Property during the pendency of this proceeding."  ECF

9   No. 6-2 at 21.  The documents submitted with their complaint and TRO show that a trustee's sale

10  of the property was held on October 18, 2010 and that the Trustee's Deed was recorded on

11  October 25, 2010, granting the property to defendant Aurora.  ECF No. 1 at 60-61.  It thus

12  appears that plaintiffs seek an order preventing their eviction from the home during the pendency

13  of this action.

14          Counsel has submitted a declaration "as required by California Code of Civil

15  Procedure § 1005(b)," averring that he sent notification of this motion to defendants Aurora and

16  MERS "on June 7, 2011," but that no one on behalf of defendant Capitol One Mortgage gave

17  him a FAX number.  ECF No. 6-4 at 1-2.  The court deems this notice to be the equivalent of the

18  notice required by Local Rule 231; *see also* FED. R. CIV. P. 65(b).  In addition, the court directed

19  plaintiffs' counsel to notify defendants of their right to file an opposition no later than noon on

20  July 8, 2011; counsel has filed a certificate of service of the minute order on defendants.

21  Defendants have not opposed the motion.

22  II.   Standard For The Issuance Of A Temporary Restraining Order

23          A temporary restraining order may be issued upon a showing "that immediate and

24  irreparable injury, loss, or damage will result to the movant before the adverse party can be heard

25  in opposition."  FED. R. CIV. P. 65(b)(1)(A).  The purpose of such an order is to preserve the

26  status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no

2

1  longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).   In

2  determining whether to issue a temporary restraining order, a court applies the factors that guide

3  the evaluation of a request for preliminary injunctive relief: whether the moving party "is likely

4  to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary

5  relief, . . . the balance of equities tips in [its] favor, and . . . an injunction is in the public

6  interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374

7  (2008); *see Stuhlbarg Int'l. Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7

8  (9th Cir. 2001) (analyses for temporary restraining order and preliminary injunction

9  "substantially identical").

10  III.  <u>The Deed Of Trust And Foreclosure</u>

11          On November 28, 2006, plaintiffs signed a Deed of Trust for the subject property,

12  which named GreenPoint Mortgage Funding as the Lender, Marin Conveyancing Corporation as

13  the Trustee, and MERS as the nominee for Lender and lender's assigns and the beneficiary under

14  the Deed of Trust.  ECF No.1 at 32-33.  Plaintiffs granted the power of sale to the Trustee.  ECF

15  No.1 at 34.  Lender GreenPoint reserved the right to substitute the trustee by an instrument

16  "executed and acknowledged" by the Lender and recorded in the appropriate recorder's office.

17  ECF No. 1 at 45

18          The Deed of Trust included this language:

19          Borrower understands and agrees that MERS holds only legal title
        to the interests granted by Borrower in this Security Instrument,
20          but if necessary to comply with law or custom, MERS (as nominee
        for Lender and Lender's successors and assigns) has the right: to
21          exercise any or all of those interests, including, but not limited to,
        the right to foreclose and sell the Property; and to take any action
22          required of Lender including, but not limited to, releasing and
        cancelling this Security Instrument.

23

24  ECF No. 1 at 34.  Finally, the deed notified plaintiffs that "the Note or a partial interest in the

25  Note (together with this Security Instrument) can be sold one or more times without prior notice

26  /////

1  to Borrower," and explained that such a sale might result in a change in the loan servicer.  ECF

2  No. 1. at 43.

3              A Notice of Default and Election To Sell was recorded in the El Dorado County

4  Recorder's office on October 18, 2009.[1]  The document is dated October 15, 2009, and above the

5  signature line is printed "Quality Loan Service Corp., AS AGENT FOR BENEFICIARY By:

6  Service Link-Irvine."  ECF No. 1 at 50.  The document is actually signed "C Banse As Agent."

7  It contains a paragraph reciting that the beneficiary or its authorized agent "has contacted the

8  borrower, tried with due diligence to contact the Borrower as required by California Civil Code

9  § 2923.5. . . " *Id.*  An attached declaration from Aurora Loan Services indicates that notice was

10  sent to the Borrower on September 2, 2009.  ECF No. 1 at 51-52.

11              Plaintiffs have provided a copy of a Substitution of Trustee whereby MERS

12  substituted Quality Loan Service Corporation as Trustee with a printed date of October 15, 2009.

13  The Substitution is signed by Mary Jane Sarne, Vice-President.  The notary's acknowledgment is

14  dated October 26, 2009.[2]  ECF No. 1 at 54-55.

15              Quality Loan Service recorded a Notice of Sale on January 21, 2010; it is signed

16  by Earl Horida as Authorized Agent.  ECF No. 1 at 57-58.

17              As noted above, Quality conducted a Trustee's Sale on October 18, 2010 and

18  recorded its Deed of Sale granting the property to Aurora on October 25, 2010.  ECF at 60-61.

19  IV.  Analysis

20              It cannot be disputed that plaintiffs will be harmed if they are evicted from their

21  home.  *See Castillo v. Skoba*, 2010 U.S. Dist. LEXIS 108432, at * 4 (S.D. Cal. Oct. 10, 2010).

22  The court must still determine, however, the plaintiffs' likelihood of success on the underlying

23  complaint as part of the analysis of their entitlement to temporary injunctive relief.

24  _____

25       [1]  The date is difficult to read on the copies provided to the court.

26       [2]  Plaintiffs have not provided a copy of the recorded substitution.

A.  <u>Enjoining The Unlawful Detainer Action</u>

What exactly plaintiffs seek to enjoin is not clear in either their complaint or the motion for temporary injunction relief.  It does appear that plaintiffs ask the court to enjoin the trial on the unlawful detainer action, set for July 11, 2011, presumably in El Dorado County Superior Court, although that also is not clear from the pleadings.

In *Younger v. Harris*, 401 U.S. 37, 53-54 (1971), the Supreme Court recognized a long-standing policy against federal court interference in on-going state proceedings.  *Younger* abstention is appropriate when (1) there are ongoing state proceedings (2) that implicate important state interests and (3) there is an adequate opportunity to raise federal issues in the state proceedings.  *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982).  A number of courts have found *Younger* abstention appropriate when asked to restrain state unlawful detainer proceedings.  *See Coyotzi v. Countrywide Financial Corp.*, 2009 WL 2461336, at **1-2 (E.D.Cal. Aug. 11, 2009); *Hicks v. Superior Court of California*, 2008 WL 489894, at *3 (E.D. Cal. Feb. 20, 2008); *Contreras v. MTC Financial Inc.*, 2010 WL 5441950, at *1 (N.D. Cal. Dec. 28, 2010).   Plaintiffs have not provided any authority to the contrary.  The court will not enjoin the state unlawful detainer proceedings.

B.  <u>Enjoining Eviction</u>

As noted, plaintiffs' complaint is comprised of eight causes of action.  Although plaintiffs argue they are likely to succeed on all of them, they have not suggested how ultimate success on their claims of fraudulent misrepresentation,[3] breach of fiduciary duty, unjust enrichment, civil conspiracy and usury would entitle them to anything but damages.  Success on these claims would not translate into a determination that they are entitled to remain in their

/////

---

[3]  In fact, in their cause of action for fraudulent misrepresentation, they claim they would not have entered into the transaction had they been given complete information about the securitization of the note.

1   home.  Three causes of action do implicate plaintiffs' possessory interest in their home: quiet

2   title, wrongful foreclosure and breach of security instrument.

3           1.   Quiet Title

4           Plaintiffs assert generally they are entitled to quiet the title to the property at issue

5   because they have sent a notice of their intent to rescind the loan transaction and they "are

6   entitled to quiet title against Defendants" because "the security is a 'securitized' bond, deriving

7   its value from the underlying mortgages."  ECF No. 1 at 22 ¶¶ 101-102.  Specifically, they

8   describe this cause of action's basis as the alleged securitization of the note as follows:

9               The real party in interest on the lender's side may be the owner of
                the asset-backed security issued by the servicing and pooling
10              vendor, the insurer through some claim equitable interests [*sic*], or
                the Federal Government through the United States Department of
11              the Treasury or Federal Reserve.  The security is a 'securitized'
                bond deriving its value from the underlying mortgages, of which
12              the subject mortgage is one. Thus Plaintiffs are entitled to quiet
                title against Defendants, clearing the title of the purported
13              mortgage encumbrance.

14   ECF 1 at 22 ¶ 102.  To the extent the court comprehends this position – apparently suggesting

15   the assignment of the note to a Real Estate Mortgage Investment Conduit (REMIC) renders any

16   interest in the property other than plaintiffs' somehow invalid – this position has been rejected

17   by numerous courts and plaintiffs have provided no authority suggesting why this court should

18   decide otherwise.  *See, e.g., Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d 1092,

19   1099 (E.D. Cal. 2010) ("the argument that parties lose their interest in a loan when it is assigned

20   to a trust pool has also been rejected by many district courts"); *see also In re Macklin*, 2011 WL

21   2015520, at *6 (Bankr. E.D. Cal. May 19, 2011) ("the fact that the Note is purchased by entities

22   which sell securities does not alter the Note").

23           Rather, when seeking to quiet title, a plaintiff must describe the property that is

24   the subject of the action, the title sought and the basis of that title, the adverse claims to the title

25   the plaintiff challenges, the date as of which the determination is sought, and include a prayer for

26   a determination of title against adverse claims.  Cal. Civ. Proc. Code § 761.20; *Schuck v. Federal*

1    *Nat. Mortg. Ass'n*, 2011 WL2580552, at *3 (E.D. Cal. June 28, 2011).  In addition, a plaintiff

2    cannot quiet title without discharging the mortgage debt.  *Aguilar v. Boci*, 39 Cal.App.3d 475,

3    477 (1974) ("the cloud upon his title persists until the debt is paid"); *Kelley v. Mortgage*

4    *Electronic Registration Systems Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009).  Plaintiffs do

5    not satisfy these requirements for quieting title.

6                 2.  <u>Breach of Security Instrument And Wrongful Foreclosure</u>

7          In their causes of action for breach of the security instrument and wrongful

8    foreclosure, plaintiffs challenge the substitution of the trustee, allegedly made in violation of

9    paragraph 20 of the Deed of Trust, and the assignment of the beneficial interest in the note,

10    suggesting that the transfer of the interest in the note to the loan pool carried with it the deed of

11    trust, rendering "any subsequent purported assignment . . . a lie . . . ." ECF No. 1 at 25-26 ¶ 124.

12    To the extent these claims also appear to rest on the securitization of the note, there is little

13    likelihood they will succeed on the merits.

14          In support of their claim for breach of the security instrument, plaintiffs allege

15    that the substitution of Quality was invalid because it was not executed by the lender.  ECF No. 1

16    at 26-27 ¶ 126.  This claim is not likely to succeed.  MERS, as nominee for the beneficiary,

17    substituted Quality as trustee; plaintiff has not discussed, much less distinguished, those cases

18    that have found MERS has the authority under a Deed of Trust to exercise those powers granted

19    to the lender.  *See, e.g.*, *Pantoja v. Countrywide Home Loans*, 640 F.Supp.2d 1177, 1188-89

20    (N.D. Cal. 2009).

21          Plaintiffs also suggest, though not with clarity, that the power of sale was not

22    properly invoked because the assignment of the beneficial interest was not recorded.  ECF No. 1

23    at 27 ¶ 126.  To the extent plaintiffs are relying on California Civil Code section 2932.5, they

24    again neither discuss nor distinguish those cases that have found this section to apply only to

25    mortgages, not to deeds of trust.  *Caballero v. Bank of America*, 2010 WL 4604031, at *3 (N.D.

26    Cal. Nov. 4, 2010); *Selby v. Bank of America*, 2010 WL 4347629, at *3 (S.D. Cal. Oct. 27, 2010).

In the absence of reasoned argument to the contrary, the court finds the *Caballero* and *Selby* cases persuasive.  The failure to record any assignment of the beneficial interest in the deed of trust in this case as demonstrating a breach of the security instrument is not an argument likely to succeed.               A portion of plaintiffs' claim concerning the substitution of the trustee may have  more merit.  Plaintiffs argue that Quality filed the Notice of Default before it was substituted as trustee and that the later substitution was not executed in compliance with California Civil Code section 2934(a).  ECF No. 1 at 26-27 ¶¶ 126-129.  But there is no section 2934(a), and section 2934 concerns assignments of mortgages or of the beneficial interests under deeds of trust.  Plaintiffs are correct, however, that the substitution of Quality as trustee was recorded only after the Notice of Default was filed.  Quality recorded the notice of default "as agent for the beneficiary," which arguably renders the notice proper under California Civil Code section 2924(a)(1), which authorizes the beneficiary, trustee or their agents to record the notice of default.  Service-Link's role in issuing the notice does give the court pause.

By the time the Notice of Sale was filed, however, Quality was properly substituted as trustee and it was Quality that conducted the Trustee's Sale.[4]  Once the substitution was recorded, Quality "suceed[ed] to all the powers, duties, authority, and title granted and delegated to the trustee named in the deed of trust."  Cal. Civil Code § 2934a(a)(4).  Assuming the Notice of Default was properly filed by an agent of the trustee or beneficiary, Quality assumed the trustee's powers upon the recording of the substitution and properly conducted the sale.

If, however, the Notice of Default was filed by Quality before it was substituted as trustee, plaintiffs may be able to show that the foreclosure is voidable.  In *Ferguson v. Avelo*

---

[4]  To the extent plaintiffs rely on the different dates on the substitution as evidence of some wrongdoing or fraud, they are mistaken: "notarization is an acknowledgment of the signer's identity and is not essential to a document's validity."  *In re Mi Arbolito, LLC*, 2010 WL 3829660, at *17 (Bankr. S.D. Cal. 2010); *see also Wilson v. Pacific Coast Title*, 106 Cal.App.2d 599, 602 (1951) (assignment valid even though it was not acknowledged until two years after it was signed).

1  *Mortgage, LLC.*, __ Cal.Rptr.3d __, 2011 WL 2139143 (Cal. Ct. App. June 1, 2011), Quality

2  recorded a notice of default before it was properly substituted as trustee.  In that case, by the time

3  Quality issued the notice of sale, it had been properly substituted.  The court found the notice of

4  sale, issued after a proper substitution, was valid, as was the foreclosure, completed "long after its

5  substitution as trustee took effect." *Id.*, 2011 WL 2139143, at *6.  The court did note that the

6  borrower could "offer no authority for the proposition that the defective nature of the initial notice

7  of default corrupted all subsequent steps in the nonjudicial foreclosure proceeding such that the

8  sale was void, not merely voidable." *Id.*

9          When a sale is voidable, rather than void, the borrower must make a tender of

10  either the whole price or the amount in default.  *Compare id.*, 2011 WL 2139143, at *3 (amount

11  of indebtedness) *with Miller v. Washington Mutual Bank*, 2011 WL 845935, at *4 (N.D. Cal. Mar.

12  8, 2011)  (amount in default).  Here, plaintiffs assert they have $25,000 as a bond "covering this

13  dispute."  At this stage of the litigation, having not heard from defendants in opposition, the court

14  accepts this amount as valid tender.

15          All things considered, on the record currently before the court, a temporary

16  restraining order is in the public interest.  In addition to the information available with respect to

17  the particular residential property at issue, plaintiffs have provided a copy of a Consent Decree

18  between Aurora and MERS and the Office of Thrift Supervision (OTS), in which Aurora agrees,

19  among other things, to hire a consultant "to conduct an independent review of certain residential

20  foreclosure actions. . . .(including foreclosures that were in process or completed) . . . that have

21  been pending at any time from January 1, 2009 to December 31, 2010 . . .".  ECF No. 6-2 at 67

22  ¶ 14.  The purpose of the review is to determine whether each foreclosure reviewed was pursued

23  "when an application for a loan modification .. . was under consideration . . .," and whether

24  proper procedures were followed.  ECF 6-2 at 68-60 ¶ 16.  It appears from the record that

25  plaintiffs were attempting to renegotiate their loan during the period to be covered by the review.

26  The OTS's order supports the conclusion in this case at this time that the public interest will be

served by restraining any eviction and allowing the process of review, which may include plaintiff's loan, to play itself out under the consent decree.

IT IS THEREFORE ORDERED that:

1.  Plaintiffs' motion for a temporary restraining order (ECF No.6) is granted subject to plaintiffs' posting a $25,000.00 bond with the Clerk of the Court by the close of business on Monday, July 11, 2011.

2.  Because plaintiffs may be able to show the foreclosure effected on the property at 3055 Orbetello Way in El Dorado Hills, California 95762 is voidable, defendants are restrained from evicting plaintiffs from this address while this order remains in effect; the court, however, does not restrain defendants from pursuing their unlawful detainer action in the state court.

3.  This matter is set for hearing on a preliminary injunction on Wednesday, July 20, at 11:00 a.m.

DATED:  July 8, 2011.

_____
UNITED STATES DISTRICT JUDGE