1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10  SUNIL WADHWA and
    LYNN LORI WADHWA,
11
                    Plaintiffs,          Civ. No. S-11-1784 KJM KJN
12        vs.

13  AURORA LOAN SERVICES, LLC,          ORDER
    et al.,
14
                    Defendants.
15  _____/

16              On October 26, 2011, the court heard argument on defendants' motion to dismiss.

17  Eric Yadao appeared for plaintiffs, who were present in court; Andrew Noble appeared

18  telephonically for defendants Aurora Loan Services LLC (Aurora), Mortgage Electronic

19  Registration Services, Inc. (MERS), and Capital One Financial Corporation (Capital One).  As

20  discussed below, defendants' motion is granted, with plaintiffs' being granted leave to amend all

21  but two claims.

22  I.  Factual and Procedural Background

23              On July 6, 2011, plaintiffs filed a complaint against Aurora Loan Services, LLC

24  (Aurora), Capitol One Mortgage Corporation and Mortgage Electronic Registration Systems,

25  Inc. (MERS), alleging causes of action for fraudulent misrepresentation, breach of fiduciary

26  duty, unjust enrichment, civil conspiracy, quiet title, usury and fraud, wrongful foreclosure and

1  breach of security instrument, all stemming from the purchase of and foreclosure on the real

2  property located at 3055 Orbetello Way, El Dorado Hills, California.  ECF No. 1 at 1.

3          On July 7, 2011, plaintiffs filed a motion for a temporary restraining order (TRO),

4  seeking an order restraining the defendants from evicting them should they succeed in the

5  unlawful detainer action scheduled to be heard in El Dorado County Superior Court on July 11,

6  2011.  ECF No. 6-2 at 1.  They asked for an order directing defendants to "refrain from reselling,

7  or otherwise transferring, encumbering, hypothecating to any third party the Subject Property . . .

8  or displacing Plaintiffs from the Subject Property during the pendency of this proceeding." *Id*. at

9  21.  The documents submitted with the complaint and TRO show that a trustee's sale of the

10  property was held on October 18, 2010, and that the Trustee's Deed was recorded on October 25,

11  2010, granting the property to defendant Aurora.  ECF No. 1 at 60–61.

12          The court granted the request for a temporary restraining order, but directed

13  plaintiffs to post a $25,000 bond, which the court was prepared to accept as the tender required

14  in a challenge to a foreclosure.  ECF No. 9 at 9–10.  Plaintiffs did not post the bond, but rather

15  provided copies of two bonds, totaling $25,000, which had been posted in El Dorado County

16  Superior Court.  ECF Nos. 12 & 13.  The court issued a minute order noting that the copies of

17  the two bonds did not satisfy its order.  ECF No. 14.  When plaintiffs did not post a satisfactory

18  bond by the deadline, the court vacated the temporary restraining order.  ECF No. 15.

19          On July 26, 2011, plaintiffs filed a second request for issuance of a temporary

20  restraining order, noting that the trial on the unlawful detainer action had been moved to August

21  1.  ECF No. 20-2 ¶ 2.  With this request, plaintiffs' counsel submitted a declaration, averring that

22  when the court issued its minute order rejecting the copies of bonds, he "immediately sought

23  issuance of a new bond; . . . however, because only eight business hours remained in the day to

24  acquire the bond, the new bond did not issue by day's end." ECF No. 20-2 ¶ 5.  He continued:

25  "[p]laintiffs have now solicited a new bond in the amount of $25,000 and are prepared to post

26  /////

2

1  said bond pursuant to the court's renewal of its order (docket #9) reinstating the TRO . . . ." ECF

2  No. 20-2 ¶ 7.

3          The court issued a minute order later on July 26, directing counsel to file

4  information about the proposed bond, including the extent of the surety's undertaking.  ECF No.

5  23.  Counsel did not respond, and the application for the temporary restraining order was denied.

6  ECF Nos. 23 & 24.

7          On August 2, 2011, plaintiffs noticed a motion for a preliminary injunction, once

8  again seeking to restrain defendants from proceeding with an unlawful detainer action, at that

9  point rescheduled for November 7, 2011.  This motion was supported by the same memorandum

10  of points and authorities submitted in support of the TRO request, as well as a declaration of

11  Sunil and Lynn Lori Wadhwa; the declaration offered a number of legal conclusions couched as

12  factual statements.  ECF Nos. 25-2 & 25-3.  At hearing on the motion, plaintiffs' counsel said he

13  was prepared to submit declarations supporting his contention that MERS' purported transfer of

14  interest was fraudulent.  He did not do so, and the motion for a preliminary injunction was

15  denied.  ECF No. 34.

16          Defendants filed the instant motion to dismiss on August 15, 2011.  Defs.' Mot. to

17  Dismiss (Mot.), ECF No. 26.  Plaintiffs filed an opposition to that motion on September 28,

18  2011.  ECF No. 31.  In support of their opposition, plaintiffs also filed a request for judicial

19  notice of certain matters.  ECF No. 32.

20  II.  Standards for a Motion to Dismiss

21          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

22  dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may

23  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

24  under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

25  1990).  A motion to dismiss under this rule may also challenge the sufficiency of fraud

26  /////

3

1   allegations under the more particularlized standard of Rule 9(b) of the Federal Rules of Civil

2   Procedure. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

3          Although a complaint need contain only "a short and plain statement of the claim

4   showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)(2)), in order to survive a

5   motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to

6   'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949

7   (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must

8   include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation"

9   or "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action.'"

10  *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint

11  will survive a motion to dismiss for failure to state a claim is a "context-specific task that

12  requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*,

13  129 S.Ct. at 1950.  Ultimately, the inquiry focuses on the interplay between the factual

14  allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King &*

15  *Spalding*, 467 U.S. 69, 73 (1984).

16          In making this context-specific evaluation, this court must construe the complaint

17  in the light most favorable to the plaintiff and accept as true the factual allegations of the

18  complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "'a legal

19  conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986)

20  (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject

21  to judicial notice" or to material attached to or incorporated by reference into the complaint.

22  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's

23  consideration of documents attached to a complaint or incorporated by reference or matter

24  subject to judicial notice will not convert a motion to dismiss into a motion for summary

25  judgment.  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Parks Sch. of Bus. v.*

26  *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir.

1   2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally

2   court is limited to face of the complaint on 12(b)(6) motion).

3   III.  Request for Judicial Notice

4           Plaintiffs ask the court to take judicial notice of several types of information.

5   First, they have proffered a Consent Order, Stipulation and Consent to Issuance of Consent

6   Order, Amended Order to Cease and Desist, all stemming from proceedings in the federal Office

7   of Thrift Supervision, *In the Matter of Aurora Bank FSB*, NE-11-16 and NE-10-33, as well as a

8   Consent Order and Stipulation and Consent To The Issuance of a Consent Order issued by the

9   Office of Thrift Supervision in *In the Matter of MERSCORP, Inc.*, AA-EC-11-20.  Second, they

10  have presented a print-out of the MERS website, dated August 31, 2011, providing a list of

11  MERS officers.  Pls.' Request for Judicial Notice, Ex. B, ECF No. 32.

12          The court will take judicial notice of the various orders and stipulations relating to

13  OTS's orders and decrees involving Aurora Bank and MERS, as these are federal government

14  documents, readily available on the OTS website.  *See Serrano v. World Savings Bank*, 2011 WL

15  1668631, at *2 (N.D. Cal. May 3, 2011) (government documents not subject to reasonable

16  dispute and so judicially noticeable).

17          The court declines to take judicial notice of the print-out of the MERS website.

18  This information is not subject to accurate and ready determination in light of the record before

19  the court.  *Compare Experian Info. Solutions, Inc. v. Lifelock, Inc.*, 633 F. Supp. 2d 1104, 1107

20  (2009) (finding that material on Governor of Connecticut's web page not "capable of accurate

21  and ready determination by resort to sources whose accuracy cannot be questioned."), *with Datel

22  Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983–84 (2010) (finding online warranty

23  information that is publicly available is capable of accurate and ready determination by sources

24  whose accuracy cannot be questioned, taking judicial notice only of the fact that the content

25  exists, not the actual content of the documents).  Because plaintiffs are using a list of MERS

26  officers downloaded on August 11, 2011 to support their claim that Mary Jane Sarne was not an

1   officer for MERS on October 15, 2009, the print-out would have no impact on the court's

2   decision even if it were judicially noticeable.

3   IV.  The Complaint

4          As noted, plaintiffs allege fraudulent misrepresentation, breach of fiduciary duty,

5   unjust enrichment, civil conspiracy, quiet title, usury and fraud, wrongful foreclosure and breach

6   of security instrument.  Many of the allegations in the complaint listed under "General

7   Allegations" are not specific to this action, but are a screed against the mortgage industry and the

8   securitization of mortgages generally.  Complaint (Compl.) ¶¶ 40–68.[1]

9          With respect to the facts of this particular case, plaintiffs allege that in October

10  2006, they executed a deed of trust with Greenpoint Mortgage as the lender and Marin

11  Conveyancing as the trustee.  *Id.* ¶ 17.  According to plaintiffs, Capitol One Financial

12  Corporation is the successor in interest to Greenpoint Mortgage Funding and is a party to this

13  action under a theory of respondeat superior.  *Id.* ¶ 4.  Greenpoint was in the business of "making

14  subprime consumer mortgage loans."  *Id*.  Plaintiffs identify defendant MERS as a business

15  operating a database and assigning mortgages "in violation of California Corporations Code

16  section 191(d)," *id.* at 3, and defendant Aurora as "a bank and/or servicer of mortgage loans." *Id.*

17  ¶ 3.

18  /////

19

---

20      [1]  For example, plaintiffs assert that "[t]he foreclosing entity and its agents regularly
    commit perjury in relation to their testimony," without providing a single instance of alleged
21  perjury in this or any other case, and that employees of Quality Loan "executed and notarized
    forged documents as to the ownership of the loan," again without providing any concrete
22  example to support the claim, and that "the multiple transfers of title of the mortgage loan
    between the originator, Greenpoint, Aurora and/or Quality Loan Service Corp., and the
23  MBS/Trust is simply ignored as it [sic] never can be proved or shown in the Court." Compl.
    ¶¶ 45, 49, 66. These contentions do not advance plaintiffs' case. *Cf. In re Macklin*, 2011 WL
24  2015520, at *13 (Bankr. E.D. Cal. May 19, 2011) (motion "packed with claims, contentions and
    inflammatory comments indicating the mortgage system" did not assist the court in reaching the
25  single issue with merit). Similarly, the claim plaintiffs make, that their "mortgage obligation has
    been paid" and their "alleged 'default' is a fiction" has been characterized as "illogical." *Id.* at
26  *5.

V.  The Motion to Dismiss

   A.  Fraudulent Misrepresentation

          Plaintiffs allege that defendants maliciously concealed information that should

have been disclosed, "materially misrepresented material information" and "misrepresented the

truth;" that plaintiffs reasonably relied on defendants "in agreeing to execute the mortgage loan

documents;" and that plaintiffs first learned of these misstatements and omissions in August

2010.  Compl. ¶¶ 70–75, 78.  In the section of the complaint providing "General Allegations,"

plaintiffs describe only one instance of concealment: they allege the defendants failed to disclose

the identity of the "true lender," that is, the members of the REMIC trust.  Compl. ¶ 61.

          Defendants argue that these allegations do not state a claim for fraudulent

misrepresentation under California law, do not distinguish between the three defendants, and do

not meet the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b).

Mot. at 4–5, ECF No. 26.  Plaintiffs do not discuss how the complaint's allegations meet the

pleading requirements.  While plaintiffs make conclusory allegations that they were not told the

source of the funding for the loan, their fraud argument is not plausible.  The basis for their fraud

allegation regarding the sale of the home is that the loan was a "fraudulent scheme" to "use

Plaintiffs' interest in the real property to collect interest in excess of the legal rate." Compl. ¶ 73.

Plaintiffs do not state what interest rate they were charged for their loan, nor do they allege that

the rate they paid was different from the rate they agreed to.  In their opposition, plaintiffs

provide examples of defendants' allegedly fraudulent acts; they claim, for example, that

defendants misrepresented to plaintiffs that defendants were the source of the loan funds and that

they "had the right to carry out a foreclosure and sale of Plaintiff's home as properly assigned or

substituted parties of interest." Pls.' Opp'n at 8, ECF No. 31.  Even if these arguments

established the elements of fraudulent misrepresentation, the court could not consider them in

evaluating the sufficiency of the complaint. *Adams v. New York State Educ. Dept.*, 752 F. Supp.

2d 420, 433 n.4 (S.D.N.Y. 2010) (court will not consider information in points and authorities in

considering sufficiency of complaint); *Winn v. Lassen Canyon Nursery Inc*., 2010 WL 4688798, at *2 (E.D. Cal. Nov. 10, 2010).

In California, a claim of fraudulent misrepresentation has five elements: (1) misrepresentation, which encompasses false representation, concealment and nondisclosure; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 637-38 (1996); *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1058 (E.D. Cal. 2009); *Dooms v. Fed. Home Loan Mortg. Corp.,* 2011 WL 1232989, at *13 (E.D. Cal. 2011). A fraud claim against a corporation must provide information about the person who made the representations challenged as fraudulent, and his or her authority to speak. *Dooms,* 2011 WL 1232989, at *14.

In addition to the usual pleading requirements of Rule 8, allegations of fraud must meet heightened pleading standards. Under Rule 9(b), a plaintiff who alleges fraud "must state with particularity the circumstances constituting the fraud," but may "aver[] generally" the state of mind animating the fraud. The pleading must "'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Sanford v. Memberworks, Inc*., 625 F.3d 550, 557-58 (9th Cir. 2010) (quoting *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009)). To avoid dismissal, the complaint must describe the time, place, and specific content of the false representations and identify the parties to the misrepresentations. *Id*.; *Dooms*, 2011 WL 1232989, at *14. In addition, a plaintiff may not "lump multiple defendants together" but rather must "differentiate their allegations." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (quoting *Cisneros v. Instant Capital Funding Grp., Inc*., 263 F.R.D. 595, 606–07 (E.D. Cal. 2009)). Plaintiffs' conclusory claims—that defendants failed to disclose the true identity of the lender—fall far short of the specificity required by the federal rules and do not match the elements of the cause of action as defined by federal law.

/////

1    Defendants also argue that the cause of action is barred by the three year statute

2    of limitations.  *See* CAL. CIV. PROC. CODE § 338(d) (three year statute of limitations for actions

3    "on the ground of fraud or mistake," which does not accrue "until the discovery . . . of the facts

4    constituting the fraud").  A party is deemed to have discovered the fraud when it "'has reason at

5    least to suspect the factual basis for its elements."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th

6    797, 807 (2005) (quoting *Norgart v. The Upjohn Company*, 21 Cal. 4th 383, 398 (1999)).  To

7    rely on a claim of delayed discovery, a plaintiff must allege facts showing that the facts could not

8    have been discovered earlier even in the exercise of reasonable diligence and identifying how

9    and when plaintiff discovered the fraud.  *Briosos v. Wells Fargo Bank*, 2011 WL 1740100, at *4

10   (N.D. Cal. May 5, 2011); *but see Bonds v. Nicoletti Oil, Inc.*, 2008 WL 2233511, at *7–8 (E.D.

11   Cal. May 28, 2008) (questioning whether California pleading standards apply, but finding it

12   plaintiff's burden to plead facts supporting delayed discovery).  Plaintiffs' bare claim that they

13   did not discover the fraud until August 2010 does not save this claim from the operation of the

14   statute of limitations.  They will be given leave to amend this portion of the complaint, if they

15   are able in light of Federal Rule of Civil Procedure 11.

16       B. <u>Breach of Fiduciary Duties</u>

17   Plaintiffs allege that defendants breached their fiduciary duty by inducing them to

18   "enter into a mortgage transaction which was contrary to Plaintiffs['] stated intention; contrary to

19   the Plaintiffs' interest; and contrary to Plaintiffs' preservation of their home." Compl. ¶ 81.

20   Plaintiffs also allege they "reposed trust and confidence" in defendants because plaintiffs are not

21   bankers, mortgage brokers, mortgage lenders or securities dealers.  *Id*. ¶ 80.  Nothing in

22   plaintiffs' description of the transaction, however, suggests that either Aurora or MERS played

23   any role in the loan origination, either as lender or broker.  Compl. ¶¶ 2–3, 12–13.  Defendants

24   argue that there is no fiduciary relationship between a lending institution and a borrower.  Mot.

25   at 5, ECF No. 26.

26   /////

The elements of a claim of breach of fiduciary duty are (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damage as the result of the breach.  *Rosal v. First Federal Bank of California*, 671 F. Supp. 2d 1111, 1128 (N.D. Cal. 2009).  Under California law, there is no fiduciary relationship between a lender and a borrower when "the institution's involvement in the loan transaction does not exceed the scope of its conventional role as mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991); *Rosal*, 671 F. Supp. 2d at 1129.  Courts have similarly determined that a loan servicer owes no fiduciary duty to a borrower "when its involvement in the transaction does not exceed the scope of its conventional role as a loan servicer such that it assumed a fiduciary duty." *Huerta v. Ocwen Loan Servicing, Inc.*, 2010 WL 728223, at *4 (N.D. Cal. Mar. 1, 2010); *Walters v. Fidelity Mortg. of Cal., Inc.*, 730 F. Supp. 2d 1185, 1205 (E.D. Cal. 2010).  Nothing in the complaint suggests that MERS, described as a corporation that operates a database and assigns mortgages, has any fiduciary relationship with a mortgagor.  Nothing in its role as nominee for the lender suggests that MERS owes any fiduciary duty to a trustor/borrower and plaintiffs have not alleged as much.  In regard to Aurora and MERS, this claim is properly dismissed with prejudice.

While a mortgage broker does have a fiduciary duty to a borrower, a lender does not. *Smith v. Home Loan Funding, Inc.*, 192 Cal. App. 4th 1331, 1332 (2011).  Plaintiffs do not allege that Greenpoint was a broker, not merely a lender, nor do they allege such facts that would allow the court to determine that Greenpoint acted as a broker.  Plaintiffs' claim against Greenpoint's successor, Capital One, is dismissed with leave to amend.

C. Unjust Enrichment

Plaintiffs allege they had an implied contract with defendants for defendants to provide credit to plaintiffs without charging fees unrelated to the settlement of the loan and that defendants should not be allowed to retain the fruits of their acts in charging a "higher interest
/////

1  rate, fees, rebates, kickbacks, profits . . . gains and other fees unrelated to the settlement services

2  provided at closing." Compl. ¶¶ 86–87.

3          Defendants contend that unjust enrichment is not an independent claim for relief.

4  Mot. at 6, ECF 26.  They note that plaintiffs have not adequately alleged facts that any

5  enrichment to defendants was unjust.  *Id.*

6          The elements of an unjust enrichment claim are "'receipt of a benefit and [the]

7  unjust retention of the benefit at the expense of another.'"  *Peterson v. Cellco P'ship*, 164 Cal.

8  App. 4th 1583, 1593 (2008) (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726

9  (2000)).  Unjust enrichment is, as defendants argue, not an independent cause of action, but

10 rather is pled as part of a quasi-contract claim "in order to avoid unjustly conferring a benefit

11 upon a defendant where there is no valid contract." *Ram v. Wachovia Mortg., FSB*, 2011 WL

12 1135285, at *9 (E.D Cal. Mar. 25, 2011).  Plaintiffs' argument not withstanding, their claim of

13 unjust enrichment is based on fees, interest rates, kickbacks and profits, among other things,

14 "unrelated to settlement services provided at closing."  ECF No. 1 ¶ 87.  They have not pled that

15 Aurora or MERS had any part in the loan closing process.  *See Jackson v. Ocwen Loan*

16 *Servicing, LLC*, 2010 WL 3294397, at *6 (E.D. Cal. Aug. 20, 2010).  Beyond their conclusory

17 statements that defendants charged "a higher interest rate, fees, rebates, kickback, profits . . . and

18 gains and other fees unrelated to the settlement services provided at closing," plaintiffs have not

19 described how Greenpoint was unjustly enriched in any way during the closing process, and

20 have pled no facts to support their claim of an implied contract.  *See Melchior v. New Line*

21 *Cinema Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("[The plaintiff] cites no evidence or

22 authority to demonstrate the existence of a triable issue of fact as to this theory [of unjust

23 enrichment under a quasi-contract theory], waiving any such claim.").  This portion of the

24 complaint fails to state a claim.  Accordingly, the unjust enrichment claims against Aurora and

25 MERS are dismissed with prejudice.  The unjust enrichment claim against Greenpoint is

26 dismissed with leave to amend.

D. Civil Conspiracy

Plaintiffs allege that "in connection with the application for and consummation of the mortgage loan . . . the Defendants agreed . . . to engage in actions in a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud Plaintiff, including . . . the commencement of foreclosure."  Compl. ¶ 93.  They also aver that defendants agreed to engage in the conspiracy to defraud "for the common purpose of accruing economic gains for themselves . . .," and that as a result of the "actions of Defendants in combination resulting in fraud and breaches of fiduciary duty," plaintiffs have suffered damages.  Compl. ¶¶ 96, 97.

The elements of a cause of action for civil conspiracy in California are "the formation and operation of the conspiracy and damage resulting to the plaintiff from an act or acts done in furtherance of the common design."  *Doctors' Co. v. Super. Ct.*, 49 Cal. 3d 39, 44 (1989); *Champlaie*, 706 F. Supp. 2d at 1057.  "[T]ort liability arising from conspiracy presupposes that the conspirator is legally capable of committing the tort; i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty."  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994); *Champlaie*, 706 F. Supp. 2d at 1057.  Plaintiffs have not identified any duty recognized by law that Greenpoint, Aurora and MERS owes to them and so have not pled a civil conspiracy claim based on breach of a specific duty.

Plaintiffs do allege that defendants entered into a conspiracy to defraud.  Like civil conspiracy in general, a conspiracy to defraud is not an independent tort, but rather "only serves as a theory of liability for claims of fraud."  *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1103 (E.D. Cal. 2010); *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 82 (2001) ("there is no separate tort of civil conspiracy, and there is no civil action for conspiracy to commit a recognized tort unless the wrongful act itself is committed . . . .").  In California, "nondisclosure is not ordinarily actionable unless the defendant is a fiduciary with a duty to

1   disclose," but "active concealment or suppression of facts by a nonfiduciary is the equivalent of

2   a false representation, i.e., actual fraud." *Younan v. Equifax, Inc*., 111 Cal. App. 3d 498, 512–13

3   (1980).  Because a conspiracy to defraud requires that the defendants engaged in fraud, the strict

4   pleading requirements of Rule 9(b) apply.  *Lane*, 713 F. Supp. 2d at 1103.  Plaintiffs have come

5   nowhere near satisfying these requirements; they will be given the opportunity to do so if they

6   are able.

7       E.  Quiet Title

8           Plaintiffs allege that defendants have no legal or equitable claim, right, or interest

9   to their property and further allege that "[t]he real party in interest on the lender's side may be

10  the owner of the asset-backed security issued by the servicing and pooling vendor, the insurer

11  through some claimed equitable interests, or the Federal Government through the United States

12  Department of the Treasury or the Federal Reserve.  The security is a 'securitized' bond deriving

13  its value from the underlying mortgages, of which the subject mortgage is one.  Thus Plaintiffs

14  are entitled to quiet title against Defendants, clearing title of the purported subject mortgage

15  encumbrance."  Compl. ¶ 102.  Plaintiffs also claim they have attempted to rescind the loan, but

16  do not know to whom the request should be addressed.  *Id.* ¶ 101.

17          Defendants argue that plaintiffs cannot quiet title, as plaintiffs have not shown

18  any procedural defect in the foreclosure notices, defendants are not required to prove standing to

19  foreclose, and plaintiffs have not shown any prejudice as a result of a procedural deficiency.

20  Mot. at 7–11, ECF No. 26.  Plaintiffs counter that none of the defendants is a real party in

21  interest, as none of them funded the loan and if tender is required, it would not be payable to any

22  of the defendants.  Opp'n at 9–10, ECF No. 31.

23          California's non-judicial foreclosure scheme provides "a comprehensive

24  framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale

25  contained in a deed of trust."  *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149,

26  1154 (2011), *quoting Moeller v. Lien*, 25 Cal. App. 4th 822, 830 (1994) (internal quotations

1   omitted).  "Nothing in the statutory provisions establishing the nonjudicial foreclosure process

2   suggests that such a judicial proceeding is permitted or contemplated," thus there is no right to

3   bring a court action to determine a nominee's authorization to foreclose.  *Id.* at 1155–56.

4          A properly conducted nonjudicial foreclosure sale constitutes a
           final adjudication of the rights of the borrower and lender . . . . If
5          the trustee's deed recites that all statutory notice requirements and
           procedures required by law for the conduct of the foreclosure have
6          been satisfied, a rebuttable presumption arises that the sale has
           been conducted regularly and properly; this presumption is
7          conclusive as to a bona fide purchaser.

8   *Moeller*, 25 Cal. App. 4th at 831.

9          Defendants are correct that they are not obligated to prove standing to foreclose

10  by producing the promissory note.  *Gomes*, 192 Cal. App. 4th at 1155.  Plaintiffs have not stated

11  a claim that would support finding any procedural defects in the foreclosure process.  *See infra*,

12  Part V.G (explaining why plaintiffs' wrongful foreclosure claim fails).  Nor have plaintiffs

13  sufficiently pled misconduct that would warrant invalidating the sale.  *See Gomes*, 192 Cal. App.

14  4th at 1154 n.5 ("California courts have repeatedly allowed parties to pursue additional remedies

15  for misconduct arising out of a nonjudicial foreclosure sale when not inconsistent with the

16  policies behind the statute") (quoting *California Golf, L.L.C. v. Cooper*, 163 Cal. App. 4th 1053,

17  1070 (2008)); *see also supra*, Part V.A (granting defendants' motion to dismiss plaintiffs' claim

18  of fraudulent misrepresentation).  Plaintiffs have failed to show any irregularities, thus the

19  presumption of regularity has not been rebutted and the nonjudicial foreclosure sale cannot be

20  attacked.

21         Tender of the indebtedness is required to quiet title in California.  *Aguilar v.*

22  *Bocci*, 39 Cal. App. 3d 475, 477 (1974) ("the cloud upon his title persists until the debt is paid");

23  *Kelley v. Mortg. Elec. Registration Sys. Inc.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009).

24  Plaintiffs allege they are able to tender the amount due under the note, stating in their complaint

25  that they "have been placing funds into an account equivalent to the mortgage payments in order

26  to cover their note obligation once the true creditor becomes known and the court has reached a

14

decision on Plaintiffs' claim." Compl. ¶ 39.  However, this allegation is inconsistent with other facts pled in the complaint.  According to plaintiffs, the notice of default was recorded on October 15, 2009, Compl. ¶ 21, the notice of Trustee's Sale was filed on January 21, 2010, Compl. ¶ 22, and the Trustee's Sale occurred on October 18, 2010.  Compl. ¶ 23.  But plaintiffs allege they did not discover that Aurora was not the real party in interest, and thus not entitled to their mortgage payments, until August 2010; further, they say, they did not learn of the alleged breach of the security instrument until September 2010.  Compl. ¶ 130.  Plaintiffs have demonstrated their unwillingness to tender payment prior to the foreclosure sale, between the notice of default and notice of Trustee's Sale, and up until the time they allegedly discovered that Aurora was not the lender to whom they should make payments, one or two months prior to the foreclosure sale.  Furthermore, plaintiffs allege the debt has been extinguished and that "there exists no obligation on which to base any foreclosure on the property."  Compl. ¶ 47.  These various allegations do not hang together as a plausible narrative.  On the record before it, nothing persuades the court of plaintiffs' willingness to tender any amount due, if they in fact acknowledge any amount due.  Nevertheless, they will be given the opportunity to amend this claim if they are able.

     F.  <u>Usury and Fraud</u>

     Plaintiffs allege that the loan and mortgage were structured so as to create the appearance that the property was worth more than the actual market value; that defendants disguised the transaction so that neither the real party in interest nor the fees, rebates or kickbacks were revealed to plaintiffs; that defendants' scheme was a plan to trick plaintiffs into signing "what would become a negotiable security used to sell unregulated securities under fraudulent and changed terms from the original note" and used to collect interest "in excess of the legal rate."  Compl. ¶¶ 108–111.  Defendants argue these allegations fail to state a claim for usury because the complaint asserts, without factual support, that the interest exceeds the legal rate.  Mot. at 11, ECF No. 26.

1    In California, "the usury laws protect against the oppression of debtors through

2 excessive interest rates charged by lenders." *Agapitov v. Lerner*, 108 Cal. App. 4th 830, 838

3 (2003).  A usury claim has four elements: the transaction must be a loan or forbearance,[2] the

4 interest must exceed the statutory maximum, the loan and interest must be absolutely repayable

5 by the borrower, and the lender must intend to enter into a usurious transaction. *Ghirardo v.*

6 *Antonioli*, 8 Cal. 4th 791, 798 (1994).  An interest rate that exceeds ten percent per annum may

7 be usurious.  CAL. CONST. Art. 15 § 1.

8    Plaintiffs do not disclose the interest rate on their loan or contend that it exceeded

9 the maximum rate allowed by law and so have not adequately pled a cause of action for usury.

10 *Solano v. Am.'s Servicing Co.*, 2011 WL 1669735, at *9 (E.D. Cal. May 3, 2011).  This claim

11 will be dismissed with leave to amend.

12    G.  Wrongful Foreclosure and Breach of Security Instrument

13    Plaintiff alleges that Aurora was never assigned the beneficial interest in the deed

14 of trust and that any assignment that MERS and Aurora claim occurred was not recorded as

15 required by section 2932.5 of the California Civil Code; therefore, they allege, MERS did not

16 have the power of sale as either agent or nominee of Aurora, voiding the subsequent foreclosure

17 sale.  Compl. ¶ 12; CAL. CIV. CODE § 2932.5 (West 2011).[3]

18    Plaintiffs further allege that because the assignment of the beneficial interest to

19 Aurora was fraudulent, Quality Loan Services' substitution as trustee is invalid, and therefore,

20 Quality Loan Services lacked any power of sale.  Compl. ¶¶ 44, 122.  In their motion to dismiss,

21 defendants assert they are not required to provide a promissory note in order to foreclose, citing

22

23    [2] "'A forbearance occurs when the creditor, in exchange for consideration, agrees to wait
for a period of time to collect the debt.  A forbearance may also occur in credit sale transactions,

24 where the original note is modified to extend the period of payment.'"  *Roodenburg v. Pavestone
Co., L.P.*, 171 Cal. App. 4th 185, 192 (2009) (quoting *Sheehy v. Franchise Tax Bd.*, 84 Cal. App.

25 4th 280, 284 (2000)).

26    [3] All subsequent references to California statutes are to the Civil Code unless otherwise
specified.

16

1    *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th at 1152; they argue that "[t]he

2    California Court of Appeal recently held that Civil Code section 2924 *et seq*. does not provide

3    for a judicial proceeding to resolve such a claim."  Mot. to Dismiss at 8, ECF No. 26.

4            The statutory scheme for nonjudicial foreclosures provides for a relatively fast

5    method for the beneficiary to recover the security on a defaulted loan.  *Moeller*, 25 Cal. App. 4th

6    at 833, *citing* 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) §§ 9:121, p. 388 & 9:154, pp. 505,

7    516.  In order to protect trustors from wrongful foreclosures, the statutory procedures require

8    strict compliance.  *Moeller*, 25 Cal. App. 4th at 830–31.  A wrongful exercise of the power of

9    sale, in violation of the statutory procedures, is invalid.  *Id.* at 831; Cal. Civ. Code § 2924

10    (West 2011).

11             1.  <u>California Civil Code Section 2932.5</u>

12            Plaintiffs' wrongful foreclosure claim partly relies on the argument that the

13    foreclosure sale is void due to defendants' failure to comply with recording requirement of

14    section 2932.5.  Compl. ¶¶ 12, 122.  Defendants admit that "[p]laintiffs correctly allege that no

15    assignment of deed of trust was recorded in the public records."  Mot. at 10, ECF No. 26.

16    However, defendant's argue that "there is no requirement that an assignment of deed of trust be

17    recorded."  *Id.*, *citing Stockwell v. Barnum*, 7 Cal. App. 413, 417 (1908); *Roque v. Suntrust*

18    *Mortg., Inc.*, 2010 WL 546896, at *3 (N.D. Cal. 2010) ("Section 2932.5 applies to mortgages,

19    not deeds of trust.  It applies only to mortgages that give a power of sale to the creditor, not to

20    deeds of trust which grant a power of sale to the trustee.").  According to the statute in question:

21                 Where a power to sell real property is given to a mortgagee, or
                other encumbrancer, in an instrument intended to secure the

22                 payment of money, the power is part of the security and vests in
                any person who by assignment becomes entitled to payment of the

23                 money secured by the instrument.  The power of sale may be
                exercised by the assignee if the assignment is duly acknowledged

24                 and recorded.

25    Cal. Civ. Code § 2932.5 (West 2011).

26    /////

In a number of factually similar cases, some federal bankruptcy courts have found section 2932.5 to apply to deeds of trust. *In re Salazar*, 448 B.R. 814, 820-21 (Bankr. S.D. Cal. 2011);[4] *see also Macklin v. Deutsche Bank Nat'l Trust Co.*, 2011 WL 2015520 at *11 (Bankr. E.D. Cal. 2011) (determining whether to grant a preliminary injunction, the court found the plaintiff was sufficiently likely to prevail on the argument that the foreclosure sale was void because the assignment of the deed of trust was not recorded).   Other courts including this one have disagreed, holding that section 2932.5 does not apply to deeds of trust.   *See, e.g.*, *Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118, 121 (2011) (section 2932.5 does not apply to a deed of trust), *Pedersen v. Greenpoint Mortg. Funding, Inc.*, CIV No. S-11-0642 KJM EFB, 2011 WL 3818560 *17–18 (E.D. Cal. Aug 29, 2011) (same); *Stockwell v. Barnum*, 7 Cal. App. 413, 416 (1908) (holding that then-section 858 does not apply to deeds of trust).

In *Salazar*, US Bank foreclosed on the debtor's house although it was not the original beneficiary of record and there was no recorded assignment to it of the deed of trust. 448 B.R. at 816.   The Bank then filed an unlawful detainer action against the debtor, and that action was close to trial when the debtor filed bankruptcy.   *Id.*   US Bank sought relief from the bankruptcy stay so it could continue with the unlawful detainer action, but the court denied the request, finding that the debtor had established a "prima facie case that the foreclosure sale was void." *Id.* at 816–17.   To reach that conclusion, the court determined that for the foreclosure to

---

[4] *In re Salazar* has been cited by a number of other bankruptcy and district courts to support various plaintiffs' attempts to invalidate non-judicial foreclosure sales. *See, e.g.*, *Tamburri v. Suntrust Mortg., Inc.*, 2011 WL 2654093, *4-5 (N.D. Cal. 2011) (finding that, given the ambiguity in the law regarding the application of section 2932.5 in light of the holding of In Re *Salazar*, the plaintiff raised a serious question on the merits of her wrongful foreclosure claim sufficient to overcome a motion to dismiss); *In re Cruz*, 2011 WL 3583115, *1 (Bankr. S.D. Cal. Aug. 11, 2011) (reaffirming the same court's earlier holding in *In re Salazar* regarding section 2932.5's application to deeds of trust).   Citations to *Salazar* in support of other plaintiffs' attempts to avoid their foreclosures are increasing, but at this point in time it appears to represent a minority position that this court declines to adopt, for reasons set forth below. *See, e.g.*, Plaintiff's Petition for Review, *Meffan v. Super. Ct.*, 2011 CA S. Ct. Briefs 96352, 2011 CA S. Ct. Briefs LEXIS 1388, * 9 (Cal. Sept. 12, 2011) (arguing that the state's supreme court should find *Salazar* persuasive regarding the law of mortgages and deeds of trust based on the case's reasoning and its treatment of legislative history and policy questions).

have been valid, US Bank had to be entitled to payment of the secured debt and its status as

foreclosing beneficiary had to be recorded before the sale, both required by section 2932.5.  *Id.*

at 820.  The court rejected the argument that section 2932.5 applied only to mortgages, finding

that the historical distinctions between the two forms of security for real property transactions

had been abolished and that it was more important than it had been during the Great Depression

for a borrower to know the identity of the entity with the power of sale.  *Id.* at 821–22.

The court in *Salazar* also rejected US Bank's argument that MERS' status as

nominee of the beneficiary obviated the need for recording of the assignment under section

2932.5.  *Id.* at 822.  It concluded that MERS' role as nominee of the beneficiary did not give it

authority to foreclose under the deed of trust, because that document reserved this power to the

lender, to be exercised by MERS only when "'necessary to comply with law or custom,'" which

was not defined.  *Id.* at 823.  The court then declined US Bank's "invitation to overlook the

statutory foreclosure mandates of California law" and rejected MERS as an alternative to public

recordation.  *Id.* at 824; *see also In re Doble*, 2011 WL 1465559 (Bankr. S.D. Cal. Apr. 24,

2011) (reaching similar conclusions).

*Salazar* relies on language from a California Supreme Court case, *Bank of Italy*,

for the proposition that "legal title under a deed of trust, though held by the trustee to the extent

necessary for execution of the trust, does not carry any 'incidents of ownership of the property.'"

*Salazar*, 448 B.R. at 821, *citing Bank of Italy Nat. Trust & Sav. Ass'n v. Bentley*, 217 Cal. 644,

656 (1933).[5]

---

[5]  *Bank of Italy*, though, does not obliterate the distinction between deeds of trust and
mortgages. As the California Supreme Court stated, "a deed of trust does not carry any incidents
of ownership of the property other than the right to convey upon default on the part of the debtor
in the payment of his debt." *Bank of Italy*, 217 Cal. at 656. *Bank of Italy* goes on to discuss deeds
of trust and mortgages as legally identical, except in regards to who holds legal title and in that
"the trustee cannot be held to hold a mere lien on the property." *Id.* The court's holding in *Bank
of Italy* did not require deciding that a deed of trust and a mortgage are in all regards legally
synonymous. *See Bank of Italy*, 217 Cal. at 658–59 (reasoning that the distinction between a
deed of trust and a mortgage disappears only where the "object to be accomplished" is the same).
*Salazar* relies on dicta in *Bank of Italy* to interpret section 2932.5, and even the dicta does not

1       Even though the trustee of a deed of trust holds title only "so far as may be

2 necessary to the execution of the trust," *Bank of Italy*, 217 Cal. at 656, this difference underlies

3 the different application of section 2932.5.  Despite their similarities, mortgages and deeds of

4 trust are in fact different in a number of ways:

5               *Parties*.  In the *mortgage*, there are two parties: the mortgagor and
               the mortgagee. . . . In the *deed of trust*, there are usually three
6               parties: the trustor, the trustee, and the beneficiary. . . .

7               *Title*.  In the *mortgage*, title remains with the mortgagor until a
               foreclosure sale; then it passes from the mortgagor to the
8               purchaser.  In the *deed of trust*, title passes to the trustee, who
               holds it until default; then, after sale, it goes from the trustee to the
9               purchaser.

10 4 Witkin, Summary of California Law, Chap. VIII § 5 (10th Ed. 2005) (emphases in original);

11 *see also Parcay v. Shea Mortg. Inc*., 2010 WL 1659369 at *12 (E.D. Cal. Apr. 23, 2010) ("A

12 deed of trust generally involves three parties, the borrower/trustor . . . who conveys the right to

13 sell the property to the trustee for the benefit of the lender/beneficiary."); *Aviel v. Ng*, 161 Cal.

14 App. 4th 809, 816 (2008) ("there are three parties to a deed of trust: (1) the trustor, who owns the

15 property that is conveyed to (2) the trustee as security for the obligation owed to (3) the

16 beneficiary") (footnote and internal quotation omitted).

17       In California, a mortgage is defined in the Civil Code as "a contract by which

18 specific property . . . is hypothecated for the performance of an act, with the necessity of a

19 change of possession." CAL. CIV. CODE § 2920 (West 2011).  However, "there are no statutory

20 provisions dictating the form or stating the effect of deeds of trust." *Domarad v. Fisher & Burke,*

21 *Inc*., 270 Cal. App. 2d 543, 553 (1969) (internal quotation omitted).  Although both are used to

22 secure the purchase of real property, early California cases treated them differently, holding that

23 a mortgage created a lien on the property rather than passing title to the mortgagee, while title

24

25 support the proposition that *Salazar* asserts. *Cal. Bank v. Schlesinger*, 159 Cal. App. 2d Supp.
854, 865 (Cal. App. Dep't Super. Ct. 1958), *citing Cohn v. Central Pac. R. Co.*, 71 Cal. 488, 498
26 (1886) ("an oft repeated dictum does not overrule a prior decision specifically determining the
question").

1    passed to the trustee under a deed of trust.  *Bank of Italy*, 217 Cal. at 654–55.  Although the

2    California Supreme Court found this distinction to have become "well settled in our law [such

3    that it] cannot now be disturbed," *id*. at 655, it also recognized that despite the "anomalous

4    nature" of deeds of trust, they are in essence "only a mortgage with power of sale." *Id.* at

5    656–57.  "In practical effect, if not in legal parlance, a deed of trust is a lien on the property."

6    *Monterey S.P. P'ship v. W.L. Bangham, Inc*., 49 Cal. 3d 454, 460 (1989).  "[M]ortgagees and

7    trust deed beneficiaries alike hold security interests in property encumbered by mortgages and

8    deeds of trust. . . ." *Id*. at 461; *Olympic Fed. Sav. and Loan Ass'n v. Regan*, 648 F.2d 1218, 1221

9    (9th Cir. 1981) ("security interests represented by deeds of trust and those by mortgage liens are

10    treated as if they were legally identical").

11        In *Stockwell v. Barnum*, 7 Cal. App. 413 (1908), the court found a directed sale

12    valid, even though the assignment of the deed of trust to the person who directed the sale had not

13    been recorded.  *Id.* at 417.  It noted that section 858 of the California Civil Code, the predecessor

14    of section 2932.5, did not apply to deeds of trust, reasoning that in a mortgage, the authority of

15    the mortgagee to sell must be clear, whereas with a deed of trust, the trustee holds the title, "thus

16    enabling him in executing the trust, to transfer to the purchaser a marketable record title.  It is

17    immaterial who holds the note." *Id.*; *see also Caballero v. Bank of Am.*, 2010 WL 4604031, at *3

18    (N.D. Cal. Nov. 4, 2010); *Selby v. Bank of Am., Inc.*, 2010 WL 4347629, at *3 (S.D. Cal. Oct.

19    27, 2010).  "If the trustee's deed recites that all statutory notice requirements and procedures

20    required by law for the conduct of the foreclosure sale have been satisfied, a rebuttable

21    presumption arises that the sale has been conducted regularly and properly. . . ." *Moeller v. Lien*,

22    25 Cal. App. 4th 822, 831 (1994); *see also Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d

23    1160, 1174 (E. D. Cal. 2010); *but see Tamburri v. Suntrust Mortg., Inc*., 2011 WL 2654093, at

24    *5 (noting that *Stockwell* was decided before distinctions between mortgages and deeds of trust

25    were blurred).

26    /////

1    *Stockwell* addresses the same question as the present case and articulates the same

2    distinction between a deed of trust and a mortgage with regard to section 2932.5 (then-section

3    858):

> This reasoning, while conclusively showing the necessity for the
> code provision as to mortgages or other encumbrances in whom a
> power of sale is vested, is wholly foreign to deeds of trust, which,
> instead of creating a lien only, as in the case of mortgages, passes
> the legal title to the trustee, thus enabling him in executing the
> trust to transfer to the purchaser a marketable record title.  It is
> immaterial who holds the note. The transferee of a negotiable
> promissory note, payment of which is secured by a deed of trust
> whereby the property and power of sale is vested in a third party as
> trustee, is not an encumbrancer to whom power of sale is given,
> within the meaning of section 858 of the Civil Code.

10   *Stockwell*, 7 Cal. App. at 417, *citing* CAL. CIV. CODE § 858 (using

11   identical language as currently codified in section 2932.5).

12   Section 2932.5 requires the recorded assignment of a mortgage so that a

13   prospective purchaser knows that the mortgagee in fact had the authority to exercise the power

14   of sale; this is not necessary when a deed of trust is involved, as the trustee conducts the sale and

15   transfers title, which sale and transfer carry a presumption of regularity.  *See Domrad*, 270 Cal.

16   App. 2d at 554 ("The purpose of the recording statutes is to give notice to prospective purchasers

17   or mortgagees of land of all existing and outstanding estates, titles or interest, whether valid or

18   invalid, that may affect their rights as bona fide purchasers").

19   The object of recording statutes, to protect the chain of title from competing

20   claims, is necessary to protecting marketable title.  CAL. CIV. CODE § 880.020; 5 Miller & Starr,

21   CAL. REAL ESTATE (3d ed. 2009) § 11:3.  The difference between a deed of trust and a mortgage

22   still remains a difference of lien or title.  *Bank of Italy*, 217 Cal. at 655.  Section 2932.5

23   addresses contingencies incident to liens, but those contingencies are not present with a deed of

24   trust, as the trustee of a deed of trust is already required to be recorded elsewhere.  *See* CAL. CIV.

25   CODE § 2924a(1) (requiring recordation of a substitution of trustee for a deed of trust).

26   /////

22

1         *Salazar* states that the distinction between a mortgage and a deed of trust is

2    outdated, and that the legislature intended for section 2932.5 to apply to deeds of trust in its

3    reference to "mortgagee, or other encumbrancer." 448 B.R. at 821–22.  In interpreting state law,

4    however, this court is bound by the decisions of the California Supreme Court, and "in the

5    absence of such a decision, the federal court must predict how the highest state court would

6    decide the issue using intermediate appellate court decisions, decisions from other jurisdictions,

7    statutes, treatises, and restatements as guidance." *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*,

8    249 F.3d 958, 960 (2001).  While some appellate courts have addressed the application of

9    section 2932.5 to deeds of trust, the California Supreme Court has not.  *E.g.*, *Calvo*, 199 Cal.

10   App. 4th 118; *Stockwell*, 7 Cal. App. at 413.  Given the doubt cast by *Salazar*, this court

11   considers how the state Supreme Court would decide the question.  *Vestar Dev. II*, 249 F.3d at

12   960.  If unconvinced that the state Court would decide differently, this court is "obligated to

13   follow the decisions of the state's intermediate appellate courts." *Id.*

14        In construing the meaning of the statute in question, the court seeks to determine

15   the meaning the legislature intended "in order to effectuate the law's purpose." *Imperial Merch.*

16   *Servs. Inc. v. Hunt*, 47 Cal. 4th 381, 387 (2009).  To do so, the court "looks to the statute's words

17   and gives them their usual and ordinary meaning.  The statute's plain meaning controls the

18   court's interpretation unless its words are ambiguous.  If the statutory language permits more

19   than one reasonable interpretation, courts may consider other aids, such as the statute's purpose,

20   legislative history, and public policy." *Id.* at 387–88 (internal citations and quotation marks

21   omitted).

22        *Salazar* points out that the California legislature now subjects deeds of trust and

23   mortgages to the same time limitations of enforcement under the Marketable Record Title Act,

24   Cal. Civ. Code §§ 880.20–887.09, and that California also provides a right of redemption after

25   a judicial foreclosure sale for both deeds of trust and mortgages through California Civil

26   Procedure § 729.010.  448 B.R. at 821 n.9.  However, these discrete examples of the legislature

1    changing specific portions of the code to apply to both deeds of trust and mortgages does not

2    signal an intent to render mortgages and deeds of trust the same for all purposes.  That "a court

3    must presume that a legislature says in a statute what it means and means in a statute what it

4    says" is not only a well-established rule of statutory construction, but is the "cardinal canon

5    before all others." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).  During the

6    same session in which the legislature relocated the language formerly at section 858 to section

7    2932.5, the legislature also considered expanding the general definition of mortgages in section

8    2920 to include all security interests in real property; instead, however, it applied only part (a) of

9    that section to hypothecated interests, which do not include deeds of trust.[6]  Alister McAlister,

10   COMMITTEE STATEMENT ON AB 2556, ASSEMB. COMM. ON THE JUDICIARY, January 17, 1986, at

11   1.  In contrast, in sections that do apply to both mortgages and deeds of trust, including the two

12   examples mentioned in *Salazar*, the legislature included express language mentioning both, as

13   discussed below.

14           For example, section 2920 and the section following provide comprehensive rules

15   for the nonjudicial foreclosure process under both mortgages and deeds of trust.  Section 2920(b)

16   expands the definition of mortgage for the purposes of sections 2924 to 2924h, yet explicitly

17   omits deeds of trust from that expanded definition.  CAL. CIV. CODE § 2920(b) (West 2011); *see*

18   *also* CAL. CIV. CODE § 2924(a) (West 2011) ("every transfer of an interest in property, other than

19   in trust, made only as a security for the performance of another act, is to be deemed a mortgage

20    . . . .") Even though much of sections 2924 through 2924h applies to both deeds of trust and

21   mortgages, the legislature specifically mentions both when any provision applies to each.  *See*

22   CAL. CIV. CODE §§ 2924–2924h (West 2011).  The code also provides different rules for deeds

23   /////

24

25           [6] "Hypothecate" means "to pledge (property) as security or collateral for a debt, without
26   delivery of title or possession." BLACK'S LAW DICTIONARY 747 (7th ed. 1999). With respect to
     deeds of trust, the title is possessed by trustee.

1    of trust where the title distinction makes such rules necessary, including the requirement that the

2    substitution of a trustee be recorded.  CAL. CIV. CODE § 2934a.

3           The legislature enacted section 2920(b) in 1986, during the same legislative

4    session that then-section 858, also dealing with recordation, was relocated to section 2932.5

5    without substantive change.[7]  During that legislative session, the analysis of the Assembly

6    Committee on the Judiciary stated that the bill proposing the change "revises the law relative to

7    the exercise of a power of sale and the nonjudicial foreclosure process by . . . expanding the

8    definition of mortgage, as it applies to the nonjudicial foreclosure process, to include any

9    security device or instrument which contains a power of sale.  This definition includes but is not

10   limited to real property sales contracts containing power of sale provisions." COMMITTEE

11   ANALYSIS OF AB 2556, ASSEMB. COMM. ON THE JUDICIARY, January 21, 1986, at 1.  While the

12   purpose of the bill was to expand the definition of mortgage to apply to land sale contracts, the

13   legislature specifically excluded deeds of trust from the definition of mortgage, instead using

14   both terms separately throughout, while still imposing similar requirements on nonjudicial

15   foreclosure involving both mortgages and deeds of trust.  *See* CAL. CIV. CODE § 2920 *et seq*.

16          This legislative history supports the inference that the legislature, which had

17   ample opportunity to amend the meaning of section 858, relocated to section 2932.5, chose not

18   to.[8]  It cannot be inferred that the legislature intended to change the meaning of section 2932.5 to

19

20          [7]  1985–1986 Cal. Stat. 4932, Ch. 1385 § 1 (enacting AB 1385 to amend section 2920 of
     the California Civil Code to define mortgage as used in sections 2924 to 2924h to mean "any

21   security device or instrument, other than a deed of trust, that confers a power of sale affecting
     real property, to be exercised after breach of the obligation so secured, including a real property

22   sales contract . . .");1985–1986 Cal. Stat. 2728, 2729, Ch. 820 § 5 (repealing section 858 of the
     California Civil Code); 1985–1986 Cal. Stat. 2728, 2735, Ch. 820 §11 (adding language of

23   repealed section 858 to section 2932.5).

24          [8]  "The doctrine of legislative acquiescence is a canon of statutory interpretation based on
     the idea that, in a nutshell, a legislative body is presumed to be aware of prior judicial

25   construction of statutory language, particularly when it undertakes to amend the area of the law
     judicially construed: If it doesn't change the language judicially construed, there is at least an
     inference that the legislature agreed with the prior judicial construction." *Gunther v. Lin*, 144

26   Cal. App. 4th 223, 236 (2006) (*Gunther* was overruled on the grounds that a plaintiff seeking

include deeds of trust.  *Estate of McDill*, 14 Cal. 3d 831, 837–38 (1975) ("It is assumed the legislature has in mind existing laws when it passes a statute.  The failure of the legislature to change the law in a particular respect when the subject is generally before it and changes are made is indicative of an intent to leave the law as it stands in the aspects not amended.").

No subsequent amendments have made similar changes to section 2932.5, or to its predecessor, section 858, even after the legislature revised its trust and probate laws and moved the language of section 858 to section 2932.5.  1985–1986 Cal. Stat. 2728, Ch. 820 §§ 5, 11 (repealing section 858 of the Civil Code and adding identical language to section 2932.5 of the Civil Code); *see also* 18 Cal. L. Rev. Comm'n Reports 501 (1986) ("Section 2932.5 continues former Section 858 without substantive change.").  If the legislature affirmatively acted to update certain sections of the code to include deeds of trust where the code otherwise only mentioned mortgages specifically, this court assumes that the sections not changed were intentionally left to exclude deeds of trust under section 2932.5.  *See Myers v. King*, 272 Cal. App. 2d 571, 579 (1969) (a court should not assume that the legislature implied an amendment to a code section based on the legislature's express amendment of another code section "where the unamended section has been generally understood and acted upon" and the unamended and amended code sections can be harmonized); *cf. Droeger v. Friedman, Sloan, & Ross*, 54 Cal. 3d 26, 43 (1991) ("Repeals by implication are disfavored and are recognized only when conflicting statutes cannot be harmonized.").

/////

---

damages for ADA violations under the Unruh Civil Rights Act need not prove intentional discrimination); *see also White v. Ultramar, Inc.*, 21 Cal. 4th 563, 572 (1999) ("when the Legislature amends a statute, we presume it was fully aware of the prior judicial construction"). In what *Gunther* characterizes as "[a] textbook example of the doctrine of legislative acquiescence," *People v. Leahy*, 8 Cal. 4th 587 (1994), the court determined that the legislature intentionally meant for a judicial construction of a statute to stand where the legislature had "made frequent amendments" to other parts of similar, related code sections, but had not amended the particular code section in question, stating, "Legislative failure to amend sections 720 or 801, though not conclusive, may be presumed to signify legislative acquiescence in our [] decision."*Gunther*, 144 Cal. App. 4th at 237, *citing Leahy*, 8 Cal. 4th at 604.

In light of this history, to hold that the recording requirement imposed by section 2932.5 applies to deeds of trust would require the court to assume that, though the legislature intended section 2932.5 to apply to deeds of trust, it either overlooked the distinction or forgot to address it.  Such a conclusion would be contrary to canons of statutory construction, but also contrary to California statute as well: "In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted . . . ." CAL. CIV. PROC. CODE § 1858 (West 2011).

To the extent recordation might be a preferable policy, there is no statutory basis for applying such a policy in this case.  When defining important property interests, "[c]omplex policy choices affecting all society are involved, and legislatures, in making such policy decisions, have the ability to gather expert evidence, solicit the advice of experts, and hold hearings at which all interested parties present evidence and express their views." *Droeger*, 54 Cal. 3d 26, 41 (1991), *citing Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 147 (1990) (internal quotation marks and citations omitted).  It is not for this court, sitting in diversity and applying the state's property laws, to substitute a more beneficial policy than charted by precedent, in the face of legislative silence.

> It is a general principle, that where a point has been settled by a series of decisions, it forms a precedent, which is not afterwards to be departed from.  It is also necessary, for the sake of property, that a settled rule should be observed.  It is in view of this principle, that an erroneous decision is permitted to stand, because its correction might occasion greater confusion to titles and rights which had grown up under it, and produce a wider spread of injustice than would result from the perpetuity of the error.

*Leese v. Clark*, 20 Cal. 387, 403 (1862).

### 2. The Role Of MERS

The Deed of Trust in this case lists MERS as the beneficiary, acting as nominee for the lender, and gives MERS the authority to take certain actions, including instituting

1   foreclosure proceedings.  Compl., Ex. B, ECF No. 1 at 32–47.  In *Salazar*, the court interpreted a

2   similar deed of trust and concluded that MERS did not have the authority to substitute the trustee

3   or seek foreclosure because that authority was reserved for the lender; MERS was authorized to

4   act only "when necessary to comply with law or custom," a phrase not explained or defined by

5   any evidence in the record.  448 B.R. at 823.

6          A number of other courts considering the same language have concluded it

7   confers on MERS the rights of the beneficiary, from foreclosing on the property, to assigning its

8   beneficial interest, to substituting a new trustee.  *See Pantoja v. Countrywide Home Loans*, 640

9   F. Supp. 2d 1177, 1188–89 (N.D. Cal. 2009) (foreclosing); *Hensley v. Bank of New York Mellon*,

10  2011 WL 2118810, at *2 (E.D. Cal. May 27, 2011) (assigning beneficial interest).  Courts that

11  have found the form deed of trust to give MERS broad authority have generally neither focused

12  on nor discussed the phrase "when necessary to comply with law or custom," suggesting the

13  phrase does not restrict MERS' authority under the deed.  Given the current state of the law, this

14  court also declines to find this language restricts MERS' ability to exercise the powers plaintiffs

15  granted to it in the deed of trust.

16         Still other courts have found that whatever the role a nominee may play when

17  "necessary to comply with law and custom," MERS acts as the agent of the lender.  *Gomes v.*

18  *Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1156 n.7 & 1157 (2011); *In re Macklin*,

19  2010 WL 2015520, at *5; *Perlas v. Mortg. Elec. Registration Sys. Inc.*, 2010 WL 3079262, at

20  *3-4 (N.D. Cal. Aug. 6, 2010); *Kurek v. Am.'s Wholesale Lender*, 2011 WL 3240482, at *2

21  (N.D. Cal. 2011); *see also In re Martinez*, 444 B.R. 192, 206 (Bankr. D. Kan. 2011) ("nominee"

22  and "agent" have "nearly identical legal definitions").  In this case, as Greenpoint's agent,

23  MERS may substitute a trustee or assign the beneficial interest under the deed.

24         Finally, at least one court has considered the meaning of the phrase with which

25  the court in *Salazar* grappled: the form language in the deed of trust "'does not . . . require that

26  the nominee have the power to act only when directed by law; rather, the nominee may act on

28

1   behalf of the Lender as authorized by the deed of trust.'" *Tapia v. U.S. Bank, N.A.*, 718 F. Supp.

2   2d 689, 697 (E.D. Va. 2010), *quoting Ruiz v. Samuel I. White P.C.*, 2009 WL 4823933, at *1

3   (E.D. Va. Dec. 11, 2009).  This court agrees.  However unfortunately arcane and obscure, the

4   language does nothing more than restate in less than clear terms that the deed of trust authorizes

5   MERS to act on the lender's behalf.[9]

6          3.  The Foreclosure In This Case

7          California's scheme of non-judicial forfeiture is contained in sections 2924

8   through 2924i.  *Garfinkle v. Super. Ct.*, 21 Cal. 3d 268, 274 (1978).  These provisions "'cover

9   every aspect'" of the foreclosure process.  *Phillips v. MERS*, 2009 WL 3233865, at *9 (E.D. Cal.

10  Oct. 2, 2009), *quoting I.E. Assoc. v. Safeco Title Ins. Co*., 39 Cal. 3d 281, 285 (1985); *see also*

11  *Moeller,* 25 Cal. App.4th at 834.

> Under California Civil Code section 2924(a)(1), a 'trustee,
> mortgagee, or beneficiary or any of their authorized agents' may
> conduct the foreclosure process.  Under California Civil Code
> section 2924b(b)(4), a 'person authorized to record the notice of
> default or notice of sale' includes 'an agent for the mortgagee or
> beneficiary, an agent of the named trustee, or an agent of that
> substituted trustee.'  'Upon default by the trustor, the beneficiary
> many declare a default and proceed with a nonjudicial foreclosure
> sale.'  *Moeller*, 25 Cal. App. 4th at 830, 30 Cal. Rptr. 2d 777.
> There is no stated requirement in California's non-judicial scheme
> that requires a beneficial interest in the Note to foreclose.  Rather,
> the statute broadly allows a trustee, mortgagee, beneficiary, or any
> of their agents to initiate nonjudicial foreclosure.  Accordingly, the
> statute does not require a beneficial interest in both the Note and
> the Deed of Trust to commence a non-judicial foreclosure sale.

20  *Lane*, 713 F. Supp. 2d at 1098–99.  Thus, under California law, a lender or its agents may ask the

21  trustee to commence non-judicial foreclosure following default if the deed of trust contains a

22

23          [9] Other courts have suggested that the analysis of MERS' authority is different when, as
24  in *Salazar*, MERS or another party seeks affirmative relief, and that such an order does not
    determine rights in property, which can only be resolved in an adversary proceeding in
    bankruptcy. *In re Emrich*, 2009 WL 3816174, at *1 (Bankr. N.D. Cal. Nov. 12, 2009); *see also*
25  *In re Mortg. Elec. Registration Sys. Litig.*, 2011 WL 251453, at *4-5 (D. Ariz. Jan. 25, 2011).
    This court declines to consider this issue in light of its conclusion here that the deed of trust
26  authorizes MERS to act.

power of sale clause.  *Gzell v. Novastar Mortg., Inc*., 2010 WL 3293537, at *9 (E.D. Cal. Aug.

19, 2010).  The first step in this process is the recording of a notice of default and election to sell

by the trustee.  *Id., quoting Moeller*, 25 Cal. App. 4th at 830; § 2924(a)(1).  Thereafter, the

trustee must wait three months before proceeding further.  *Moeller*, 25 Cal. App. 4th at 830;

§ 2924(a)(2).[10]  Twenty days before the sale, the trustee must publish, post and mail a notice of

sale, which must be recorded fourteen days before the sale.  *Moeller*, 25 Cal. App. 4th at 830;

§ 2924f(b)(1).  The borrower's opportunity to cure the default by paying the amounts in default

continues until five days before the sale.  *Moeller*, 25 Cal. App. 4th at 830; § 2924c(a)(1).

          In this case, the Notice of Default was dated October 15, 2009, and recorded on

October 18, 2009 on behalf of Quality Loan Service, as agent for the beneficiary, by

ServiceLink-Irvine, and signed by someone "as agent." Compl., Ex. C, ECF No. 1 at 49–50.  A

substitution of Quality for Marin Conveyancing as Trustee was signed on October 15, 2009, but

not notarized until October 26, 2009.  *Id*., Ex. B, ECF No. 1 at 54–55.  Quality recorded the

Notice of Trustee's Sale on January 21, 2010.  *Id*., Ex. E, ECF No. 1 at 57–58.  Quality

conducted the trustee's sale on October 18, 2010.  *Id*., Ex. F, ECF No. 1 at 60–61.  The Notice of

Default lists Aurora as the beneficiary and Quality Loan Service as the "agent for the

beneficiary." *Id*., Ex. F, ECF No. 1 at 61.  The Substitution of Trustee designates Quality Loan

Service as the new trustee of the deed of trust, and is signed by an officer of MERS.  *Id*., Ex. D,

ECF No. 1, ECF 54–55.

          As noted above, MERS had the authority to assign its interest to Aurora; the

assignment has no impact on the validity of the foreclosure and does not constitute a breach of

the trust instrument.  The substitution of Quality as trustee after the notice of default was

recorded is more troublesome, but ultimately not conclusive.  First, the notice of default is signed

---

[10] This section has been amended, effective January 11, 2011. The court refers to the sections of the statute in effect on October 18, 2009, at the time the notice of default was filed in this case.

1    by C. Bane, of ServiceLink-Irvine on behalf of Quality, acting as agent for the beneficiary.  *Id.*,

2    Ex. C, ECF No. 1 at 50.  Under section 2924(a)(1), "the trustee, mortgagee, or beneficiary, or

3    any of their authorized agents" are authorized to file a notice of default.  Nothing in the record

4    suggests that ServiceLink-Irvine or the person who actually signed the Notice of Default was not

5    authorized to act for the trustee or beneficiary.  And once the substitution was recorded, Quality

6    "suceed[ed] to all the powers, duties, authority, and title granted and delegated to the trustee

7    named in the deed of trust." CAL. CIV. CODE § 2934a(a)(4) (West 2011).  Assuming the Notice

8    of Default was properly filed by an agent of the trustee or beneficiary, Quality assumed the

9    trustee's powers upon the recording of the substitution and properly conducted the sale.

10                  Even assuming that the Notice of Default was filed before Quality was

11   substituted, plaintiffs are not entitled to relief.  *See generally, Calvo v. HSBC Bank USA, NA.*,

12   199 Cal. App. 4th 118 (2011).  In *Calvo*, Aztec Foreclosure Corporation recorded a notice of

13   default more than three months before it was properly substituted as trustee.  *Id.* at 121.  Aztec

14   recorded the substitution of trustee on the same day that it recorded the notice of trustee's sale.

15   *Id*.  The court found the notice of sale, issued after the proper substitution, was valid, as was the

16   foreclosure.  *Id*.  The court in *Calvo* addressed the argument that a non-judicial foreclosure sale

17   is void where the assignment of a deed of trust is not recorded, but firmly rejected that legal

18   theory.  *Id.* at 124–25.  It observed that as deeds of trust began to largely replace mortgages in

19   the past century, "section 2932.5 (and its predecessor, section 858) became practically obsolete

20   and were generally ignored by borrowers, creditors, and the California courts." *Id.* at 125.  "On

21   the other hand," the court continued, "other statutes expressly give MERS the right to initiate

22   foreclosure on behalf of [the beneficiary] irrespective of the recording of a substitution of

23   trustee." *Id*.

24                  Other California appellate cases reach a similar result.  *See U.S. Hertz, Inc. v.*

25   *Niobrara Farms*, 41 Cal. App. 3d 68, 85 (1974) (no prejudice when substitution was recorded

26   one minute after the notice of default); *compare Dimock v. Emerald Props. LLC*, 81 Cal. App.

4th 868 (2000) (entity that conducted the sale had been replaced as trustee; foreclosure void); *Pro Value Props., Inc. v. Quality Loan Serv. Corp.*, 170 Cal. App. 4th 579, 581 (2009) (substitution never recorded; sale void).

To set aside a sale, however, the party challenging it must tender the amount of the debt or at least the amount of the default, because "if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs." *FPCI RE-HAB 01 v. E& G Invests., Inc.*, 207 Cal. App. 3d 1018, 1022 (1989); *but see Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997) ("the [plaintiff's] action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt"). In the present case, plaintiffs attack neither the validity of the debt nor the fact that they are in default. As noted above, plaintiffs have not tendered the amount owed, the amount they are in default, or even suggested they were willing and able to tender the costs of the trustee's sale. While plaintiffs do claim they have deposited the amount of their mortgage payments into a separate bank account "in order to cover their note obligation once the true creditor becomes known," this representation is inconsistent with other facts pled in the complaint. *See supra* Part V.E (explaining the dissonance created by plaintiffs' varying allegations).

That plaintiffs' willingness to tender any amount is in doubt is illustrated by their allegation that "[t]he true owner or beneficiary of the mortgage loan has not declared a default, cannot declare a default under its Trust Agreement, and does not have an interest in the Note that allows for any remedial actions to be undertaken by the Beneficial Interest Holder(s)." Compl. ¶ 46. Plaintiffs go on to state that "the obligations reflected by the note . . . have been satisfied in whole or in part because the investors who furnish the funding for these loans have been paid to the degree that extinguishments [sic] of the debts has occurred with the result that there exist no obligation on which to base any foreclosure on the property." *Id.* ¶ 47. Essentially seeking a windfall, plaintiffs have not satisfactorily pled the ability to tender, which would be necessary to

1    proceed on a claim of wrongful foreclosure.  Plaintiffs will be given leave to amend this portion

2    of the complaint if, in good faith and subject to Federal Rule of Civil Procedure 11, they can

3    allege that they have the willingness and ability to meet the tender requirement.

4    VI.  Plaintiffs' Leave to Amend

5             Rule 15(a) allows that leave to amend "shall be freely given when justice so

6    requires."  FED. R. CIV. P. 15(a).  Accordingly, "[i]f the underlying facts or circumstances relied

7    upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to

8    test his claim on the merits.  In the absence of any apparent or declared reason—such as undue

9    delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

10   by amendments previously allowed, undue prejudice to the opposing party by virtue of

11   allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules

12   require, be 'freely given.'"  *Forman v. Davis*, 371 U.S. 178, 182 (1962).

13            During oral argument on the motion to dismiss, counsel for defendants asserted

14   that all claims should be dismissed with prejudice, arguing that plaintiffs had already filed a

15   number of related state court actions, and that two prior federal court actions asserting the same

16   claims against the same parties have been dismissed, one as duplicative of the current case, and

17   the other on the merits of the claim.  Contrary to counsel's characterization, plaintiffs' two other

18   cases in this court were dismissed on purely procedural grounds.  *See Wadhwa v. Aurora Loan*

19   *Serv.*, No. CIV. S-10-3361 WBS DAD, 2011 WL 1601593 (E.D. Cal. June 28, 2011) (*Wadhwa*

20   *I*); *Wadhwa v. Aurora Loan Serv.*, No. CIV S-11-1525 WBS DAD PS, 2011 WL 3585055 (E.D.

21   Cal. Sept. 14, 2011) (*Wadhwa II*).  Counsel for plaintiff clarified that the only duplicative claim

22   was brought by plaintiffs pro se, and was withdrawn upon counsel's retention.  *Wadhwa II*, 2011

23   WL 3585055, at *3.  The second claim was dismissed based on lack of jurisdiction.  *Wadhwa I*,

24   2011 WL 1601593, at *1.  No such jurisdictional defects are present here.

25            Regarding plaintiffs' claims against Aurora and MERS for unjust enrichment and

26   breach of fiduciary duty, as noted above, dismissal with prejudice is appropriate.  A "proposed

amendment is futile only if no set of facts can be proven under the amendment that would constitute a valid and sufficient claim." *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).  "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995).  These claims as to Aurora and MERS are futile and thus properly dismissed with prejudice.  *See supra* Part V.

Regarding the other claims, while "the consideration of prejudice to the opposing party carries the greatest weight," the court does not find defendants will be prejudiced here. Despite plaintiffs' other actions, both here and in state court, "[plaintiffs] ought to be afforded the opportunity to test [their] claim[s] on the merits." *Forman*, 371 U.S. at 182.  Claims other than unjust enrichment and breach of fiduciary duty against Aurora and MERS are dismissed with leave to amend.

VII.  Conclusion

IT IS THEREFORE ORDERED that:

Defendants' motion to dismiss, ECF No. 26, is granted as follows:

1.  Plaintiffs' causes of action for breach of fiduciary duty and unjust enrichment as to Aurora and MERS are dismissed with prejudice;

2.  Plaintiffs' remaining causes of action are dismissed with leave to amend; and

3.  Plaintiffs' amended complaint is due twenty-one days from the date of this order.

DATED:  March 7, 2012.

_____
UNITED STATES DISTRICT JUDGE